UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BENJAMIN J. GREEN,

        Plaintiff,

v.                                      Case No. 8:08-cv-2240-T-17EAJ

DEPUTY KENNETH EULER,

        Defendant.

## **O R D E R**

This cause is before the Court on Defendant Deputy Kenneth Euler's motion for summary judgment, with exhibits. (Doc. 19); and Plaintiff Green's response in opposition to the motion for summary judgment. (Doc. 26).[1]

### **The Complaint**

In his amended 42 U.S.C. § 1983 civil rights complaint (hereinafter "complaint" (Doc. 8), Green alleges Pinellas County Sheriff's Office (PCSO) Deputy Euler violated his Fourth, Fifth, Eighth, and Fourteenth Amendment Constitutional rights. Green admits he was validly stopped by Defendant Euler; but, that once the initial stop concluded, Green

---

[1] Green names State Attorney John Doe as a Defendant. However, this Defendant was not served.

alleges the five-minute continued detention and subsequent search violated his Constitutional rights.

**Factual Background**

On February 12, 2005, Green was stopped pursuant to a valid DUI checkpoint. (Doc. 8 -¶ VII). Deputy Euler came in contact with Green during this checkpoint stop. (Doc 8 - ¶VII) At the time of the contact with Green, Deputy Euler was a certified law enforcement officer with the Pinellas County Sheriff's Office for approximately 5 years. (Doc. 19- Attachment A - Affidavit Euler - ¶2). Also at the time of the stop, Deputy Euler was a certified drug recognition expert. (Doc. 19 -Attachment A - ¶3) To obtain this drug recognition certification, Deputy Euler attended an 80-hour training course followed by a series of evaluations performed on individuals to ascertain whether a person is impaired and if so, the specific source of the impairment that can originate from seven different categories of drugs. (Id.) The training includes evaluations of a suspect's eyes, their bodily movements and speech to appropriately detect and categorize impairment from drugs. (Id.) Maintaining this certification requires a series of evaluations each year to ensure proficiency. (Id.)

At the time of the stop, Deputy Euler was familiar with the controlled substance MDMA, which is also known as ecstasy. (Doc. 19- Attachment A - ¶4). He had learned about the substance through his training. He read literature on the substance and reviewed pictures and slides. (Id.) Further, he had encountered individuals in possession of MDMA. (Id.) Deputy Euler knew that MDMA is a pill that varies in color and usually has some type of design or emblem on the pill, such as a turtle or a leprechaun. (Doc. 19 - Attachment A

- ¶5) Although MDMA has different variations of colors and emblems, upon examination, a trained Deputy can readily identify a substance as MDMA with those characteristics. (Id.)

Deputy Euler was working in his official capacity at the DUI checkpoint when he came in contact with Green who was stopped pursuant to checkpoint policies and procedures. (Doc. 19 -Attachment A - ¶6) Once Green's vehicle came to a stop, Deputy Euler approached Green and obtained Green's driver's license. (Doc. 19 -Attachment A - ¶7) Deputy Euler handed Green's driver's license to another deputy to check its validity and to check whether Green had outstanding warrants. (Id.) During this brief contact to obtain Green's driver's license, Deputy Euler noticed that Green's movements were slow. (Id.) Green's eyes had a dazed- like appearance and were bloodshot and watery. (Id.) However, Deputy Euler did not notice an odor of alcohol. (Id.)

Deputy Euler requested that Green exit his vehicle for the Deputy to continue his investigation. (Doc. 19 -Attachment A - ¶8) Deputy Euler intended to perform the horizontal gaze nystagmus (HGN) test on Green. (Id.) To administer the HGN test, Deputy Euler must come in close proximity to Green to observe Green's eyes. (Id.) As Green exited his vehicle Green was facing the front of his car requiring Deputy Euler to walk around Green so they would be facing each other. (Doc. 19 - Attachment A - ¶9) Deputy Euler was approximately 18 to 20 inches from Green. (Id.) As Deputy Euler passed beside Green, Deputy Euler noticed in the side of Green's jacket pocket a greenish half of pill that was not in a container. (Id.) At that time, Deputy Euler could not see if there was an emblem or design on the pill. (Id.) Based on his training, education and experience coupled with the mannerisms of Green, the color of the pill and the lack of container for the pill, Deputy Euler believed the pill was probably MDMA, but he could not conclusively state that the pill was

MDMA. (Doc. 19 - Attachment A - ¶10) In order to conclusively state that the pill was MDMA to the exclusion of any other controlled substance, Deputy Euler wanted to see if there was an emblem or design on the pill. (Id.)

Therefore, Deputy Euler continued his investigation and administered the HGN test. (Doc. 19 - Attachment A - ¶11) Deputy Euler did not notice any nystagmus, but did notice that Green's eyes were dilated which is consistent with certain drugs. (Id.) Deputy Euler further observed Green's posture and his demeanor. (Id.) Green's posture and demeanor, although slow and deliberate, were not at a level that led Deputy Euler to believe Green was under the influence of drugs to the extent his normal faculties were impaired. (Id.) However, based on his training and experience with MDMA, Deputy Euler knew that a person who has taken half of a pill could experience symptoms such as slow movements, dazed appearance, bloodshot eyes and/or dilated eyes. (Id.) Yet, since Deputy Euler still had not been able to see if there was an emblem on the half pill in Green's pocket and having concluded that Green was not DUI and having learned from the other Deputy that Green's license was valid with no outstanding warrants, Deputy Euler's investigation was concluded and he returned Green's driver's license to Green. (Doc. 19 - Attachment A - ¶13)

According to Green, after Deputy Euler returned his license, Deputy Euler asked him to sit back in the car. (Doc. 19- Attachment B – Motions – Pg. 33: Ln. 21-22) Next, in his Amended Complaint Green swears Deputy Euler pulled Green back out of his car. (Doc 8 - ¶VII) Yet, during Green's prior testimony, Green testified that he stepped out of the car. (Doc. 19 -Attachment B – Pg. 34: Ln. 5-6) Green states that Deputy Euler asked him, "Do you have any drugs or weapons on you?" (Id. at Ln. 1) Green claims he stated, "No, I

4

don't." (Id. at Ln. 2) According to Green, Deputy Euler then reached inside Green's jacket pocket and retrieved the half pill. (Doc 8 - ¶VII) Green denies giving Deputy Euler consent to search. (Doc 8 - ¶VII)

Deputy Euler contends that Green gave him consent to search. (Doc. 19 - Attachment A - ¶15) Upon finding the pill, Deputy Euler read Green his *Miranda* warnings. (Doc. 19 - Attachment A – ¶16) Green told Deputy Euler the half pill was ecstasy. (Id. and Doc. 19 - Attachment D - ¶2) He further told Deputy Euler he purchased the pill for $5. (Attachment D - ¶8) Green was arrested for possession of this controlled substance. (Doc. 19 - Attachment A – ¶17) Green was subsequently prosecuted criminally in the State of *Florida v. Benjamin Green*, Case No. CRC05- 02909CFANO. (Doc. 19 - Attachment B – Pg. 1)

Green admits the half pill was inside a kangaroo like pouch in the front of his jacket and the pill was not in a container. (Doc. 19 - Attachment C – Green's Answers to Interrogatories – ¶¶8 and 9) Furthermore, Green admits the half pill was the controlled substance ecstasy. (Doc. 19 - Attachment D – Plaintiff's Answer to Request for Admissions - ¶¶1 and 2) Green estimates the amount of time that passed from Deputy Euler returning his driver's license until the time he removed the half pill was 5 minutes. (Doc. 19 - Attachment E – Plaintiff's Supplemental Answers to Interrogatories – ¶11) Green admitted he was not injured in any way when Deputy Euler allegedly pulled him from his car. (Doc. 19 - Attachment C – ¶3)

On August 28, 2006, Pinellas County Circuit Court Judge Linda R. Allen heard Green's motion to suppress in the criminal case based on an alleged violation of Green's Fourth Amendment rights. (Doc. 19 - Attachment B – Pg. 4: Ln. 17; Doc. 26 - Exhibit 1)

Both Green and the State of Florida were represented by counsel. (Doc. 19 - Attachment B – Pg. 2) Both Green and Deputy Euler testified at the hearing. (Attachment B – Pg. 3: Ln. 4-8) Deputy Euler testified that Green gave consent to search. (Attachment B – Pg. 13: Ln. 23-25 Pg 14: Ln. 1) Green testified he never gave Deputy Euler any "idea" that he could search Green. (Doc. 19 - Attachment B – Pg. 34: Ln. 7)

Green's attorney argued that Green merely complied with Deputy Euler's orders in a coercive atmosphere which, according to him, was how the search took place. (Doc. 19 - Attachment B – Pg. 45: Ln. 3-9) The attorney for the State argued a consensual encounter following the completion of the traffic stop. (Doc. 19 - Attachment B – Pg. 49: Ln. 1-2) The attorney for the State further argued that Green gave consent to search. (Doc. 19 - Attachment B – Pg. 51: Ln. 11)

Ultimately, the Judge denied the motion to suppress finding Green gave consent to search his person. (Doc. 19 - Attachment B – Pg. 57: Ln. 9-11) The Judge further found Deputy Euler did not order Green to do anything. (Attachment B – Pg. 56: Ln. 24-25) Green proceeded to a jury trial and was found not guilty. (Doc. 8 - ¶VII).

Based substantially on the aforementioned facts, Green files this civil rights action while incarcerated. (Doc. 8 - ¶I) Green claims Deputy Euler violated his "4th Amendment right against search and seizure, his 5th Amendment right against due process, his 8th Amendment right against cruel and unusual punishment and his 14th Amendment right for equal protection." (Doc. 8 - ¶VI) Green indicates he "suffered compensatory damages, false imprisonment, mental anguish, physcological (sic) trauma, humiliation, and loss of life's pleasures." (Id.) Notably, Green does not seek nominal damages nor does he request any other relief. (Id.)

**STANDARDS OF REVIEW**

Standard of Review for Qualified Immunity

Qualified immunity protects officials performing discretionary functions from liability "where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). As long as an official's conduct is not unlawful, the doctrine of qualified immunity exempts government officials from damage suits to enable them to perform their responsibilities without threats of liability. *Hutton v. Strickland*, 919 F.2d 1531, 1536 (11th Cir. 1990). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995)(quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

A government official's conduct is evaluated under an "objective legal reasonableness" standard. *Koch v. Rugg*, 221 F.3d 1283, 1295 (11th Cir. 2000). Subjective intent is irrelevant to the issue *Id.* Under the "objective legal reasonableness" standard, a government official performing discretionary functions is protected if "a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time of conduct occurred." *Hardin v. Hayes,* 957 F.2d 845, 848 (11th Cir. 1992). The Supreme Court has set forth a two part analysis to be applied to a defense of qualified immunity. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The threshold inquiry a court must undertake is whether Green's allegations, if true, establish a constitutional violation. If no constitutional

right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201. However, if a constitutional right would have been violated under Green's version of the facts, the next sequential step is to ask whether the right was clearly established. *Id.*; *Storck*, 354 F.3d at 1314. The *Saucie*r analysis is still an appropriate consideration in qualified immunity cases but the sequence of analysis should not be regarded as an inflexible requirement in all cases. *Pearson v. Callahan*, 129 S. Ct. 808 (2009).

In *Saucier*, the Supreme Court stated that the relevant query is whether it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. In *Hope,* the Supreme Court refined the *Saucier* query, holding that the "…salient question… is whether the state of law gave [the officers] fair warning that their alleged treatment [of Green] was unconstitutional." The *Hope* Court emphasized that officers sued in a section 1983 action have a "right to fair notice." 536 U.S. at 739. To demonstrate that summary judgment is appropriate on a qualified immunity defense, the defendant must show that he is entitled to judgment as a matter of law, and that there are no genuine issues of material fact pertinent to that law. *Sims v. Metro Dade County*, 972 F.2d 1230, 1233-34 (11th Cir. 1992)(citing *Rich v. Dollar*, 841 F.2d 1558, 1562 (11th Cir. 1988)).  In the Eleventh Circuit, "for the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors in the defendants' place, that what he is doing violates federal law." *Jenkins v. Talladega City Board of Education*, 115 F.3d 821, 823 (11th Cir. 1997)(en banc)(citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"[A] public official is entitled to qualified immunity unless, at the time of the incident, the preexisting law dictates, that is, truly compel[s], the conclusion for all reasonable similarly situated public officials that what [the official] was doing violated [the plaintiff's] federal rights in the circumstance." *Wilson v. Zellner*, 200 F.Supp. 2d 1356, 1360 (M.D. Fla. 2002), (citing *Marsh v. Butler County*, 268 F.3d 1014, 1030-31 (11th Cir. 2001)(en banc)).

Standard of Review for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *See id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable

to the non-movant and resolve all reasonable doubts in that party's favor. *See Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences n favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau,* 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

**Because there are no genuine issues of material fact remaining, Defendant Euler's motion for summary judgment will be granted.**

### DISCUSSION

First, Green is collaterally estopped from bringing this cause of action due to the trial judge's ruling denying Green's motion to suppress. In a § 1983 action, federal courts

10

apply the state's law of collateral estoppel. *Wood v. Kesler*, 323 F.3d 872, 879-80 (11th Cir. 2003). "Under Florida law, collateral estoppel applies if (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction." *Quinn v. Monroe County*, 330 F.3d 1320, 1329 (11th Cir. 2003). If these factors are met, collateral estoppel is applicable to a ruling on a motion to suppress. *Brown v. State*, 397 So.2d 320 (Fla. 2nd DCA 1981).

Here, the issue decided by the state court judge on the motion to suppress and the issues raised by Green in this action are identical. In each action, Green alleges a violation of his Fourth Amendment rights due to an alleged continued detention and search without consent. The state court judge conducted a hearing on these issues. She heard testimony and listened to arguments of counsel. Ultimately, the state court judge found that Green's Fourth Amendment rights were not violated by the actions of Deputy Euler. Consequently, if these actions involve the same parties or their privies, then Green's action is barred by collateral estoppel.

Deputy Euler was not a party to the criminal case. The State of Florida was the Plaintiff in the criminal case. Green, in the case at bar, was the defendant in the criminal case. Therefore, Green is the same party but Deputy Euler is not, nor is he in privity with the State of Florida. However, this is not fatal to the application of collateral estoppel since it is the defendant in this action that is applying collateral estoppel.

"Florida Courts have relaxed the mutuality requirement and approved the use of defensive collateral estoppel by a defendant who was not a party, or in privity with a party, to the prior suit." *Quinn*, 330 F.3d at 1329. Specifically, the Florida Supreme Court collaterally estopped a civil action after a judicial determination in the criminal case was

11

rendered on the same issue. *Ziedwig v. Ward*, 548 So.2d 209 (Fla. 1989). Applying the defensive collateral estoppel exception to the case at bar, Defendant Euler meets the requirements of collateral estoppel. Consequently, since the elements of defensive collateral estoppel are shown, Green's action is barred.

Additionally, summary judgment must be granted because probable cause existed prior to the alleged unconstitutional conduct of Deputy Euler. Although Green claims Deputy Euler violated his Fourth, Fifth,[2] Eighth and Fourteenth[3] Amendment rights, there are no factual allegations in his amended complaint other than those that relate to a possible Fourth Amendment violation. The factual basis in Green's amended complaint is that once Deputy Euler returned Green's driver's license to him, any further detention or subsequent search was without justification.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637, 2640 (1983). It is well settled that a person may be subject to a search incident to a lawful arrest. *U.S. v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 471 (1973). It is also well settled that a felony arrest is lawful if it is supported by probable cause. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Therefore, since probable cause for Green's arrest existed at the time

---

[2] Green alleges Deputy Euler asked him a question prior to reading him his *Miranda* rights. This would not violate any substantive Fifth Amendment right that would sustain a cause of action for money damages under § 1983. *Jones v. Cannon*, 174 F.3d 1271, 1290-1291 (11th Cir. 1999).

[3] Green does not allege any extreme or patently abusive characteristics that would have previously been held to violate the Due Process Clause of the Fourteenth Amendment in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205 (1952).

Deputy Euler returned Green's driver's license, the alleged subsequent detention and search were not contrary to the Fourth Amendment.

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Case v. Eslinger* 555 F.3d 1317, 1327 (Fla. 11th Cir. 2009) (citing *Illinois v. Gates*, 462 U.S. 213, 245 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983)). Probable cause does not require overwhelmingly convincing evidence, just 'reasonably trustworthy information. *Id.*

At the time of the alleged unconstitutional conduct, Deputy Euler had been with the Sheriff's Office for 5 years and was a certified drug recognition expert. Deputy Euler had attended a training course followed by a series of evaluations performed on individuals. Deputy Euler had evaluated suspect's eyes and their bodily movements to appropriately detect impairment from drugs.

Deputy Euler was familiar with the controlled substance MDMA or ecstasy. Deputy Euler had encountered individuals in possession of MDMA. Deputy Euler knew that MDMA varies in color and usually has an emblem on the pill. He had learned about MDMA through his training by reading literature and reviewing pictures and slides as well as his previous encounters with individuals in possession of MDMA.

Prior to returning Green's driver's license, Deputy Euler had observed a half of a pill in Green's pocket. The half of a pill was not in a container. The half of a pill was greenish in color. The characteristics of the pill were consistent with MDMA. In fact, Deputy Euler thought the half pill was probably MDMA even without seeing an emblem on the pill.

Also prior to returning Green's driver's license, Deputy Euler had made several observations of Green. Specifically, Deputy Euler noted Green's movements were slow and deliberate. Green's eyes had a dazed appearance and were bloodshot, watery and dilated.

Based on his training, education and experience, Deputy Euler knew that a person who had ingested a half of a pill of MDMA could experience the symptoms he noted that Green was experiencing. Plus, another half of a greenish pill that was not in a container was in Green's pocket.

These known undisputed facts would cause a prudent person to believe that Green ingested half of a MDMA pill and put the other half in his pocket for later. Therefore, probable cause existed that Green was committing the felony possession of a controlled substance. Consequently, since probable cause existed for Green's arrest, Deputy Euler was justified in both searching and seizing Green.

Summary judgment is also appropriate because Deputy Euler is entitled to qualified immunity. Deputy Euler was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred in this case. *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988). "Discretionary authority" includes all actions of a governmental official that (1) "were undertaken pursuant to the performance of his duties," and (2) were "within the scope of his authority." *Id.*

It is undisputed that Deputy Euler was a law enforcement officer taking action pursuant to the performance of his duties as a law enforcement officer. Deputy Euler was acting with in the scope of his authority by conducting an investigation at a DUI checkpoint. Consequently, Deputy Euler has established the first prong of the qualified immunity analysis. Once the defendant establishes he was within the scope of his discretionary

authority, the burden shifts to Green to demonstrate that defendant violated clearly established constitutional law. *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2513 (2002). Deputy Euler did not violate clearly established constitutional law because probable cause existed prior to this alleged unconstitutional conduct. However, even if this Court were to find the absence of probable cause, Deputy Euler would still be is entitled to qualified immunity because there was arguable probable cause.

Arguable probable cause exists if the deputy could have believed that probable cause existed in light of the reasonably trustworthy knowledge he possessed if this knowledge would cause a prudent person to believe the suspect is committing an offense. *Storck v. City of Coral Springs,* 354 F.3d 1307, 1317 (11th Cir. 2003). Since determinations of probable cause are often difficult, officials should be held liable only where their conduct was clearly proscribed. *Anderson v. Creighton*, 483 U.S. 635 (1987).

Deputy Euler testified he believed the pill was probably MDMA, yet he returned Green's license and did not arrest Green. In the plain view/open view context, Florida courts have distinguished between the unique identifying characteristics of marijuana and the not so unique characteristics of cocaine. *State v. Fischer*, 987 So.2d 708 (Fla. 5th DCA 2008). The reasoning is that cocaine, by itself, is too similar to too many other white powders to be readily apparent to even a trained officer. *Id.* MDMA has one unique identifying characteristic -- the emblem on the pill -- as evidenced by Deputy Euler's admission that he could not conclusively state the pill was MDMA absent seeing an emblem on the pill.

Subjectively, it appears Deputy Euler did not believe he had probable cause absent seeing the emblem on the pill. However, this does not end the analysis because

subjective intentions play no role in a probable-cause Fourth Amendment analysis. *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769 (1996).

Therefore, the issue of arguable probable cause is properly stated as whether a deputy with Deputy Euler's background, education and training, armed with the knowledge of Green's actions and demeanor could have believed a pill that was consistent with the size and coloring of MDMA was the controlled substance MDMA. As set forth previously in the probable cause analysis, all facts considered by Deputy Euler were based on his personal observations. Therefore, the facts are trustworthy. Further, the knowledge was obtained through Deputy Euler's training and experience. Therefore, the knowledge is trustworthy. Furthermore, there is no evidence that indicates this pill was not MDMA. No fact or knowledge learned during the course of the investigation dispels the reasonable belief that the pill was MDMA. Consequently, a reasonable prudent person could and would believe that the pill was MDMA. If facts of this nature do not rise to the level of probable cause, then the law has not been clearly established.

The Supreme Court has declared that the clearly established law inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. 194, 121 S.Ct. 2151 (2001). "For the law to be clearly established to the point that qualified immunity does not protect a government official, 'pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.'" *Hudson v. Hall*, 231 F.3d 1289, 1294 (11th Cir. 2000) (quoting *Lassiter,* 28 F.3d at 1150). If at the time the law did not clearly establish that a law enforcement officer's conduct was unconstitutional, then

"the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599 (2004).

Any legal principles in place as of February 12, 2005, that might be interpreted to determine Green's rights were violated are too generalized to serve as clearly established law providing fair notice that the subsequent detention and search was unreasonable in this factual context. In short, assuming arguendo that Green could establish that Deputy Euler's actions violated his constitutional rights; he cannot establish that the law was clearly established in this specific factual context as of February 12, 2005.

In *Caplan v. State*, 531 So.2d 88 (Fla. 1988), the Florida Supreme Court outlined several factors that courts had considered in combination with observing potential contraband that lacked unique identifying characteristics. Specifically, among others, the court noted actions of the accused (furtive movements, fleeing upon seeing the police) and knowledge of the officer (expertise to conclude the item was contraband). Ultimately, the Supreme Court concluded that mere observation of potential contraband is not enough without some other element being present. *Id.*

As argued previously, Deputy Euler was not basing his belief that the pill was MDMA on the pill alone. Deputy Euler had many other factors present in addition to his belief that the pill was contraband. Deputy Euler noted the actions of Green and had the specialized knowledge to correlate the observations of Green's demeanor with the identification of the pill. While the factors applied by Deputy Euler are not the same as those noted by the Supreme Court, the factors used by Deputy Euler are not unreasonable. Nor can it be said that the factors used violate clearly established law. Deputy Euler is entitled to granted summary judgment based upon the protections of qualified immunity.

Plaintiff Green's response to the motion for summary judgment is not persuasive.

Accordingly, the Court orders:

That Defendant Euler's motion for summary judgment (Doc. 19) is granted. The Clerk is directed to enter judgment against Green and to close this case.

ORDERED at Tampa, Florida, on January 29, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Benjamin J. Green